# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

RICHARD H HARTMAN, II

        Plaintiff

v.

CHARTER COMMUNICATIONS, INC.
ET AL.

        Defendant(s)

_____/

Case No. 1:14CV243

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION TO COMPEL ARBITRATION WITH RESPECT
## TO DEFENDANT CHARTER COMMUNICATIONS, INC.

Plaintiff Richard H. Hartman hereby files this Brief in Support of Plaintiff's Motion to Compel Arbitration with Respect to Defendant Charter Communications, Inc., and states as follows:

## BACKGROUND

The Plaintiff has sued Charter Communications, Inc., et al. for violations of the Telephone Consumer Protection Act. Since the filing of this lawsuit, Plaintiff has discovered the existence of an additional defendant, Straight Forward of Wisconsin, Inc., which was added to the lawsuit by way of an amended complaint on February 9, 2015. Now the Plaintiff has become aware of an arbitration provision in his service agreement with Charter Communications, Inc., which states that any dispute between the Plaintiff and Charter Communications, Inc.

**must** be arbitrated, and that the Plaintiff and Charter Communications, Inc. have waived their rights to a trial by a judge or jury in the event of a dispute with one another. Thus, an order compelling Charter Communications, Inc. to participate in arbitration with the Plaintiff is appropriate, pursuant to the arbitration provision contained in the Terms and Conditions of Charter Residential Services Agreement between Charter Communications, Inc. and the Plaintiff (the "Agreement"). (See Exhibit "A" – General Terms and Conditions for Charter Residential Services).

Section 24 of the Agreement between Charter Communications and the Plaintiff states, **"This Agreement requires the use of arbitration to resolve disputes."** (Emphasis supplied). The agreement goes on to state, **"Charter and Subscriber agrees to arbitrate disputes and claims arising out of or relating to this Agreement, the Services or marketing of the Services Subscriber has received from Charter."** (Emphasis supplied).

The Agreement is subject to the Federal Arbitration Act, as it states, "THIS AGREEMENT MEMORIALIZES A TRANSACTION IN INTERSTATE COMMERCE. THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THESE ARBITRATION PROVISIONS. (Emphasis in original).

Finally, the Agreement states, "SUBSCRIBER AGREES THAT, BY ENTERING INTO THIS AGREEMENT, SUBSCRIBER AND CHARTER ARE WAIVING THE RIGHT TO A TRIAL BY JUDGE OR JURY. (Emphasis in original).

## LEGAL STANDARD

The United States Supreme Court has held, "Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate valid, irrevocable and enforceable." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744. (2011).

The Supreme Court goes on to state that the FAA reflects, "both a liberal federal policy favoring arbitration" and the "fundamental principal that arbitration is a matter of contract." *Id.* at 1745.

"The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1748.

"§ 4 [of the FAA] requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement..." *Id.* at 1748 (alteration in original).

The North Carolina Supreme Court has also held, "There is a strong public policy favoring the settlement of disputes by arbitration..." *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986).

## ARGUMENT

Pursuant to Charter Communication, Inc.'s own Agreement, private arbitration is the required forum to resolve the dispute between Charter Communication, Inc. and the Plaintiff that is the subject of the instant lawsuit.

The instant lawsuit is still in its very early stages, thus Charter Communications, Inc. will not be prejudiced by the Court compelling it to participate in arbitration. The North Carolina Supreme Court has held, that in

order for a party to be prejudiced by a delay in its opponent seeking arbitration, "(1) it is forced to bear the expense of a long trial, (2) it loses helpful evidence, (3) it takes steps in litigation to its detriment or expends significant amounts of money on the litigation, or (4) its opponent makes use of judicial discovery procedures not available in arbitration. *Servomation* at 854.

In the instant case, number (4) above is the Defendant's only possible argument, and the very limited discovery that has taken place thus far, which has been requests for interrogatories, production of documents and admissions, are all available under the American Arbitration Association. In addition, the discovery requests were all objected to and/or evaded by the Defendants, thus the Defendants cannot reasonably argue that Plaintiff was able to obtain information that would not be available in arbitration. (See Exhibit "B", Defendant Charter Communication, LLC's Response to Plaintiff's Discovery Requests).

Importantly, the very limited discovery that was provided to the Plaintiff by the Defendants was not provided by Charter Communications, Inc. It was provided by Charter Communications, LLC, through its counsel, was unsigned by the Defendant, and not provided under oath as required by the Federal Rules of Civil Procedure. (See Exhibit "B"). As Charter Communications, LLC. is not a party to the instant Motion, and Charter Communications, Inc. did not participate in discovery, it cannot be reasonably argued that Charter Communications, Inc. is prejudiced by the Motion.

There have been several North Carolina courts that have held that have held

that engaging in extensive discovery can waive a litigants right to arbitration, but those cases have all involved extensive (a year or more) discovery, as well as the taking of depositions. *See Moose v. Versailles Condo. Ass'n,* 171 N.C. App. 377, 282, 614 S.E.2d 418, 424 (2005) (upholding the trial court's determination that the appellant waived the right to compel arbitration by conducting extensive discovery, including deposing a party opponent and causing the party to incur significant expense); *Prime South Homes v. Byrd,* 102 N.C.App. 255, 258, 401 S.E.2d 822, 825-26 (1991) (holding that a party had waived the right to have a dispute submitted to arbitration based, in part, upon that party's conduct in taking the deposition of a particular witness).

In 2013, the North Carolina Supreme Court took a closer look at what types of discovery would be deemed a waiver of the right to arbitrate a dispute, and determined that conducting discovery did not waive the right to arbitrate unless it could be **proven** that the discovery procedures employed "**would be unavailable in arbitration.**" *See HCW Retirement and Financial Services, LLC v. HCW Employee Benefit Services, LLC, N.C. Sup. Ct. (2013).*

As the types of discovery that has taken place in these proceedings would also be available under the rules of the American Arbitration Association, such limited discovery would not result in a waiver of the right to arbitrate the dispute even if the discovery requests were responded to by Charter Communications, Inc., which they were not.

The instant dispute falls squarely within the scope of the arbitration

provision, which specifically includes the Marketing of Charter Communication, Inc's services. Furthermore, even if the arbitration provision did not specifically include this type of dispute, which it does, it is well settled law that, "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *MedCam, Inc. v. MCNC*, 414 F.3d. 972, 975 (8th Cir. 2005). A court should therefore find a claim is covered by an arbitration agreement "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986)).

The Agreement requires the Plaintiff to serve Charter Communications, Inc. written notice of intent to arbitrate the dispute, which the Plaintiff has sent via Certified Mail prior to the filing of the instant motion. (See Exhibit "C" – Written Notice of Intent to Arbitrate).

As the remaining defendants in this action were not parties to the Agreement, those defendants are not included in the arbitration provision, and the instant lawsuit should remain active with respect to those defendants.

**WHEREFORE**, the Plaintiff respectfully requests the Court compel Defendant Charter Communications, Inc. to participate in private, binding arbitration to resolve the instant dispute, in accordance with its Agreement with the Plaintiff, order the lawsuit to remain active with respect to the remaining

defendants, and for such further and other relief the Court deems appropriate under the circumstances.

Dated February 12, 2015.

Richard H. Hartman, Plaintiff
185A Weston Rd
Arden, NC 28704
Rick@RickHartman.com

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that I conferred with counsel for Defendants regarding this motion via email, however did not receive Defendant's consent prior to the filing of the motion, thus it is presumed that Defendants oppose this motion.

Richard H. Hartman, II

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Court via United States Mail on February 12, 2015. The Court's CM/ECF system will provide notification of such filing to Defendant c/o Samuel H. Poole, Jr., Cranfill, Sumner & Hartzog, LLP., Post Office Box 30787, Charlotte, NC 28230, email: shp@cshlaw.com.

Richard H. Hartman, II

# Exhibit
# "A"


Offers    TV    Internet    Voice    Support    Business

<u>Terms of Service/Policies</u>

## GENERAL TERMS AND CONDITIONS FOR CHARTER RESIDENTIAL SERVICES

In addition to these Residential General Terms and Conditions of Service ("General Terms"), You ("Subscriber") agree to be bound by the terms of service applicable to the residential Charter service(s) to which You subscribe (hereafter, "Service" or "Services"), as well as the Charter Subscriber Privacy Notice which may each be found at www.charter.com, under "Terms of Service/Policies" and "Your Privacy Rights," as such may be updated from time to time (collectively, the "Terms of Service"), which are incorporated herein by this reference. In the event of any conflict between these General Terms below and the Service-specific Terms of Service, the Service-specific Terms of Service shall control.

If Charter provides Charter Voice™ service (also, "Phone Service") in Subscriber's area, it will be provided through the Charter Phone affiliate servicing Subscriber's area. For purposes of this Agreement, "affiliate" means any subsidiary of Charter Communications, Inc.

Subscriber's signature on the work order presented upon installation of Services and/or Subscriber's use of Services are evidence of Subscriber's agreement to the Terms of Service. Charter may change its prices, fees, the Services, and/or the Terms of Service. Subscriber's continued use of the Services after notice of the change, shall be considered Subscriber's acknowledgement and acceptance of the changes. The current version of the Terms of Service may be found at "www.charter.com" under "Terms of Service/Policies." Subscriber may not modify the General Terms below, the Service-specific Terms of Service, or the Charter <u>Subscriber Privacy Notice</u> by making any typed, handwritten, or any other changes to it for any purpose. This is a binding legal document.

These General Terms and the Terms of Service do not apply to services sold under the Charter Business® brand.

**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 24, WHICH INCLUDES A WAIVER OF CLASS ACTIONS AND PROVISIONS FOR OPTING OUT OF ARBITRATION, WHICH AFFECTS SUBSCRIBER'S RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICES.**

1. **Payment of Charges.** Subscriber will be billed monthly in advance for Services to be received, plus pro-rata charges, if any, for periods not previously billed. Subscriber will be billed monthly for Pay Per View, On Demand or other Services ordered where charges are based on actual usage or on orders placed during the previous month. Subscriber shall pay all monthly charges and all applicable fees and taxes as listed on the Charter monthly bill.

Subscriber shall notify Charter of disputed items within thirty (30) days of receipt, or longer as required by applicable law. Failure to pay charges billed (including checks returned for insufficient funds) may result in discontinuance of Service, the removal of all Charter Equipment (as defined below) and/or imposition of a late payment or service charge. If the Subscriber has more than one account (business and/or residential) served by Charter, all Charter-provided Services at all locations may be subject to suspension or discontinuance of Service in the event any one account remains unpaid, and Charter may apply any funds received from Subscriber first to such delinquent account(s). Should Subscriber wish to resume a Service after any suspension, Subscriber may be subject to a

Case 1:14-cv-00243-MR-DLH   Document 18-1   Filed 02/18/15   Page 9 of 30

reconnection fee. Should Subscriber wish to resume a Service after termination of Service, Charter may charge an installation fee and/or service activation fee. These fees are in addition to all past due charges and other fees. In the event collection activities are required, an additional collection charge may be imposed.

Subscriber's first bill may include prorated charges for Service received. If partial payment is made of any bill and without waiving its right to collect the full balance owed, Charter will apply that payment to any outstanding charges in the amounts and proportions that it determines.

**2. Payment by Check; Non-Sufficient Funds/Returned Items; Third Party Processing.** If Subscriber makes payment by check, Subscriber authorizes Charter to collect such payment electronically. Subscriber may not amend or modify this Agreement with any restrictive endorsements (such as "paid in full"), releases, or other statements on or accompanying checks or other payments accepted by Charter, any of which notations shall have no legal effect. If Subscriber's card issuer or financial institution refuses payment for insufficient funds, closed or unauthorized accounts, or any other reason, Subscriber will be charged an insufficient fund charge (as set forth in the applicable Video Service rate card or Voice Service Price Guide for Subscriber's area) for each instance in which such payment is refused. Subscriber hereby authorizes Charter to collect any declined amount and the insufficient funds charge(s) electronically from the subject account. In addition, Subscriber's Service may be suspended and/or terminated. This fee is in addition to any charges Subscriber's financial institution may assess. If initially rejected, Charter may make additional multiple attempts to execute the payment for up to thirty (30) days following the initial refusal.

Customer shall be responsible for any payment processing fees incurred when using a third party to process Customer's payments to Charter.

**3. Charter Refund Policy/30-Day Guarantee.** New Subscribers (those who have not been Charter customers for 90 days prior to subscription) qualify to have all levels of subscription Service refunded/credited if not fully satisfied with the service. Current Subscribers adding a new level of subscription Service qualify to receive a refund/credit only on those newly added Services not received within the previous 90 days. Such refund is valid for customers who pay for their first month of new or upgraded monthly recurring subscription Services. Pay-Per-View and other non-recurring subscription purchases are not refundable in addition to any installation fees that may apply. Subscriber is limited to one refund or credit per household for a maximum of 30 days of Service. Refunds/credits will be given only when request for cancellation of Service is received by Charter within 45 days of installation of Service (30 days subscribing to the Service, plus 15 day grace period for formal request of refund/credit). Any equipment associated with the new subscription must be returned prior to release of refund/credit. Any state taxes, franchise fees and other fees or charges that may apply are the responsibility of the Subscriber and will not be refunded or credited. Other restrictions per any offer apply.

**4. Charter Property:** All Charter-provided equipment distributed to and/or installed for use in the Subscriber's service location(s) by or on behalf of Charter ("Equipment") remains the property of Charter. None of the Equipment shall become a fixture. Charter Equipment is intended to service and reside at the specific Service location and is not to be used or relocated off premises without Charter authorization. Subscriber must return all Equipment upon substitution of use or termination of Service. Failure to do so will result in a charge to be determined in accordance with Charter's then current schedule of charges for non-returned Equipment, which amount shall be due immediately. Subscriber agrees to pay such charge whether the Equipment is lost (through theft or otherwise), damaged or destroyed.

**5. Disruption of Service:** All Charter Services are provided on an "AS IS" and "AS AVAILABLE" basis. In no event shall Charter be liable for any failure or interruption of Service, including without limitation those failures and interruptions resulting in part or entirely from circumstances beyond Charter's reasonable control. Subject to applicable law, Charter may give credit with respect to Subscriber's

recurring monthly subscription fee for qualifying outages of Charter Services.

6. **Charter Equipment**: Charter will repair and/or replace defective Equipment, if any, as long as such damage was not caused by misuse or other improper operations or handling by Subscriber. Charter shall have the right to presume misuse or other improper operations or handling by Subscriber in the event Subscriber requests repair or replacement more than twice in any twelve (12) month period, or more than three times in any twenty-four (24) month period, and shall have no obligation to fulfill any such repair or replacement. Charter is not responsible for the maintenance or repair of Subscriber-provided equipment, including but not limited to telephones, computers, modems, televisions, or any other related Subscriber-provided equipment. A service charge may be imposed upon the dispatch of a technician if there is damage to Charter Equipment due to negligent use or abuse or if no fault is discovered in Charter's system or Equipment. Charter makes no warranties, with respect to Equipment or Service provided by Charter or with respect to the compatibility of the Service or the Equipment with any Subscriber-provided equipment.

ALL EQUIPMENT IS PROVIDED "AS IS", AND CHARTER HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF MERCHANTIBILITY, NON-INFRINGEMENT, TITLE, AND FITNESS FOR A SPECIFIC PURPOSE.

CHARTER SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES (INCLUDING WITHOUT LIMITATION, LOST BUSINESS, REVENUE, PROFITS, OR GOODWILL) ARISING FROM THE USE, DEPLOYMENT, AND/OR FUNCTIONALITY OF ITS EQUIPMENT.

Charter's sole obligation and Subscriber's sole remedy with respect to any liability or damage caused by Subscriber's use or deployment of Charter Equipment, shall be a refund of fees paid by Subscriber for such Equipment for the previous billing month/cycle.

7. **Subscriber Property**: Charter assumes no responsibility and shall have no responsibility for the condition or repair of any Subscriber-provided equipment and/or software. Subscriber is responsible for the repair and maintenance of Subscriber-provided equipment and/or software. Charter is not responsible or liable for any loss or impairment of Charter's Service due in whole or in part to a malfunction, defect or otherwise caused by Subscriber-provided equipment and/or software.

Notwithstanding anything to the contrary, Subscriber agrees to allow Charter and our agents the right (A) to install hardware in, (B) send software downloads to, and (C) install, configure, maintain, inspect or upgrade Subscriber-provided equipment to the extent necessary to provide Service. Subscriber warrants that Subscriber is either the owner of such equipment or that Subscriber has the authority to give Charter access to it.

8. **Taxes/Fees**: Subscriber agrees to pay any local, state or federal taxes and fees imposed or levied on or with respect to the Services, the Equipment or installation or service charges incurred with respect to the same (including franchise fees).

With respect to applicable government imposed fees and taxes, including franchise fees, Charter will review on a quarterly and annual basis the amount it collects in franchise fees and taxes and start refunding to current subscribers franchise fees and taxes it may have collected in excess of sums due to governmental authorities within 15 months of the end of each calendar year. In some cases, Subscriber may be billed for franchise fees that relate to time periods before Subscriber began receiving service. Charter will not bill Subscriber for these past franchise fees more than 4 years after the year they are incurred by Charter. Franchise fees resulting from an audit by the applicable franchising authority are incurred at the time those fees are assessed.

9. **Care of Charter Property and Service**: Subscriber agrees that neither Subscriber nor any other person (except Charter's authorized personnel) will: (A) open, tamper with, service, or make any alterations to the Equipment; nor (B) remove or relocate any Equipment from the service address of initial installation. Any alteration, tampering, removal, or the use of Equipment which permits the

receipt of Services without authorization or the receipt of Services to an unauthorized number of outlets, or to unauthorized locations, constitutes theft of service and is prohibited. Notwithstanding the foregoing, upon receipt of a request by Subscriber, Charter shall relocate the Charter Equipment for Subscriber within Subscriber's home at a time mutually agreed to by Charter and Subscriber. Subscriber may incur a charge for such relocation and should consult a current Charter schedule of rates and charges prior to requesting such relocation. If the Subscriber moves residences outside of Charter's service area, Subscriber shall notify Charter that this Agreement shall be terminated and the provisions of Section 13 shall apply to such termination.

**10. Access to Subscriber Premises:** Subscriber authorizes Charter and its employees, agents, contractors and representatives to access and otherwise enter the Subscriber's premises to install, inspect, maintain and/or repair the Equipment and, upon the termination of Service, to remove the same from the premises. Charter's failure to remove its Equipment shall not be deemed an abandonment thereof. If the installation and maintenance of Service are requested at Premises that, in Charter's sole discretion, are or may become hazardous or dangerous to our employees, the public or property, Charter may refuse to install and maintain such Service.

**11. Recording of Communications:** Customer acknowledges and agrees that all communications between Customer and Charter may be recorded or monitored by Charter for quality assurance or other purposes.

**12. Assignment or Transfer:** This Agreement and the Services and/or Equipment supplied by Charter are not assignable or otherwise transferable by Subscriber, without specific written authorization from Charter.

**13. Termination and Expiration:**

a. **Termination by Subscriber:** Unless otherwise terminated, this Agreement shall automatically renew on a month-to-month basis. Subscriber acknowledges that upon such renewal all pricing is subject to change. To terminate any recurring service, Subscribers must call 888-438-2427, or provide a hardcopy written notice of termination to Charter delivered to 2 Digital Place, Floor 4, Simpsonville, SC 29681.

b. **Termination for Bankruptcy:** Charter shall have the right to terminate this Agreement immediately in the event that Subscriber makes an assignment for the benefit of creditors, or a voluntary or involuntary petition is filed by or against Subscriber under any law having for its purpose the adjudication of Subscriber as a bankrupt or the reorganization of Subscriber.

c. **Termination for Breach:** In the event of any breach of this Agreement by Subscriber, the failure of Subscriber to abide by the rates, rules and regulations of Charter, the failure of Subscriber to provide and maintain accurate registration information, or any illegal activity by the Subscriber using any Charter Service, this Agreement may, at Charter's option, be terminated and Charter's Equipment removed. Failure of Charter to remove such Equipment shall not be deemed abandonment thereof. Subscriber shall pay reasonable collection and/or attorney's fees to Charter in the event that Charter shall, in its discretion, find it necessary to enforce collection or to preserve and protect its rights under this Agreement. Charter may terminate this Agreement or Charter may reject an application or block access to or use of any component of any Charter Service for any reason including, but not limited to, if:

i. Subscriber violated this Agreement as to this or another Charter account;

ii. the information required in the application process is or becomes incorrect, absent or incomplete;

iii. Subscriber threatened or harassed any Charter employee, agent, contractor or representative;

iv. Subscriber's credit card issuer refuses a charge or any other payment method fails to compensate Charter;

v. there is a violation of the Terms of Service or other agreements (such as Term Agreements) with respect to any Charter Service, as

determined in the sole discretion of Charter; or

vi. the amount of technical support required to be provided to Subscriber is excessive as determined in the sole discretion of Charter.

Subscriber further agrees that in the event of termination pursuant to subsections (b) or (c), Charter shall have no liability to Subscriber.

d. **Obligations Upon Termination:** The Subscriber agrees that upon termination of this Agreement:

i. Subject to 13.a, Subscriber will pay Charter in full for Subscriber's use of the Equipment and the Services, as applicable, up to the later of the effective date of termination of this Agreement, the date on which the Charter Service has been disconnected, or the date on which the Equipment is returned to Charter. The Subscriber agrees to pay Charter on a pro-rated basis for any use by the Subscriber of any Charter Service for a part of a month;

ii. Subscriber will promptly return all Equipment to Charter. In the event that Subscriber fails to return any Equipment within ten (10) days of the termination of this Agreement in addition to Equipment charges contemplated in Section 13.d, Subscriber shall be liable to Charter in accordance with Charter's then current schedule of charges for non-returned Equipment.

e. **Renewal after Cancellation or Termination:** Subscriber acknowledges and agrees that in the event of renewal after cancellation or termination of a Charter Service, Subscriber shall be subject to the pricing, warranties, and Terms of Service as are effective at the time of such renewal.

14. **Security Deposit:** Any security deposit required of Subscriber for the Equipment or Charter's Service will be due and payable upon the first monthly billing. Such security deposits will be returned to Subscriber within sixty (60) days of termination of Charter's Service so long as payment has been made for all amounts due on Subscriber's account and Subscriber has returned the Charter Equipment undamaged.

15. **Advance Payment:** Subscribers who are unable or unwilling to provide information to establish credit worthiness or who have an unsatisfactory credit rating may be required to make an advance payment. The advance payment will be equal to the applicable installation charge and one month of recurring charges, excluding taxes, fees and surcharges. The advance payment will appear as a credit and be applied to the first monthly bill. Charter reserves the right to refuse service if the Subscriber fails to fulfill standard credit requirements. After service has been established, the Subscriber will be responsible for the payment of all applicable charges, including taxes, fees and surcharges to avoid discontinuance of service.

16. **Content and Services:** All services are subject to change in accordance with applicable law.

17. **Rates:** All rates are subject to change in accordance with applicable law.

18. **Late Fee:** If Subscriber's account is 30 days past due, a reminder message will be included on Subscriber's monthly bill. If Subscriber's past due balance remains unpaid, Subscriber may be charged an applicable late fee in addition to Subscriber's past due balance at Charter's then current rate. If Subscriber's account remains unpaid Subscriber's Services may be disconnected. Subscriber can avoid incurring late fees by paying Subscriber's monthly bill promptly. Any late fees assessed are not considered interest credit service charges, finance charges or penalties. Charter expects that Subscriber will pay for Services on a timely basis, and Charter does not extend credit to customers.

19. **Disclaimer:** Charter assumes no liability for any program, services, content or information distributed on or through the Services and Charter expressly disclaims any responsibility or liability for Subscriber's use thereof. Further, Charter shall not be responsible for any products, merchandise or prizes promoted or purchased through the use of the Services.

20. **Right to Make Credit Inquiries:** Subscriber authorizes Charter to make inquiries and to receive information about Subscriber's credit experiences, including Subscriber's credit report, from others, to enter this information in Subscriber's file, and to disclose this information concerning Subscriber to appropriate third parties for reasonable business purposes.

21. **Charter's Reservation of Rights:** Charter reserves the right to refuse, suspend or terminate Service to any person at any time for any reason not prohibited by law. When practical, Charter will provide notice that is reasonable under the circumstances before suspending or terminating Service to an existing Subscriber, and Charter will provide any prior notice of suspension or termination that is required by law.

22. **LIMITATION OF LIABILITY.** THE LIMITATION OF LIABILITY SET FORTH IN THIS SECTION APPLY TO ANY ACTS, OMISSIONS AND NEGLIGENCE OF CHARTER AND ITS THIRD-PARTY SERVICE PROVIDERS, AGENTS AND SUPPLIERS (AND EACH OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, AGENTS, CONTRACTORS OR REPRESENTATIVES).

UNDER NO CIRCUMSTANCES SHALL CHARTER BE LIABLE TO CUSTOMER FOR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE SERVICE OR ANY ACTS OR OMISSIONS ASSOCIATED THEREWITH, INCLUDING ANY ACTS OR OMISSIONS BY THIRD-PARTY SERVICE PROVIDERS, AGENTS OR SUBCONTRACTORS OF CHARTER, OR RELATING TO ANY SERVICES FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR ANY OTHER LEGAL THEORY, AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED HEREIN FAILS. CHARTER'S ENTIRE LIABILITY AND CUSTOMER'S EXCLUSIVE REMEDY WITH RESPECT TO THE USE OF THE SERVICES OR ANY BREACH BY CHARTER OF ANY OBLIGATION CHARTER MAY HAVE UNDER THESE TERMS OF SERVICE OR APPLICABLE LAW, SHALL BE CUSTOMER'S ABILITY TO TERMINATE THE SERVICE OR TO OBTAIN THE REPLACEMENT OR REPAIR OF ANY DEFECTIVE EQUIPMENT PROVIDED BY CHARTER. IN NO EVENT SHALL CHARTER'S LIABILITY TO CUSTOMER FOR ANY CLAIM ARISING OUT OF THIS AGREEMENT EXCEED THE AMOUNT PAID BY CUSTOMER DURING THE PRECEDING THIRTY (30) DAY PERIOD.

23. **Privacy Policy.** Charter will provide Subscriber with a copy of its customer privacy policy at the time Charter provides Service to Subscriber, and annually afterwards, or as otherwise required by law. Subscriber can view the most current version of our privacy notice by going to "www.charter.com, and then "Your Privacy Rights." Subscriber assumes sole responsibility for all privacy, security and other risks associated with providing personally identifiable information to third parties via the Service. To the extent that Charter is expressly required to do so by applicable law, Charter will provide notice to Subscriber of a breach of the security of certain personally identifiable information about Subscriber. Subscriber agrees that Charter may collect and disclose information concerning Subscriber and Subscriber's use of Service in the manner and for the purposes set forth herein and in Charter's privacy policy. In order to protect the privacy of Subscriber's account information, Charter may require that Subscriber use a security code or other method, in addition to the user name and password, to confirm Subscriber's identity when requesting or otherwise accessing account information or making changes to Subscriber's Service through Charter's customer service representatives. Subscriber may also choose to designate an authorized user of Subscriber's account (an "Authorized User"), who will be able to access Subscriber's account information and make changes to Subscriber's account. Once established, an Authorized User may be required to authenticate his/her identity in the same manner according to Charter's policies.

24. **ARBITRATION.** The following provisions are important with respect to the Agreement between Subscriber and Charter regarding Charter's Services.

PLEASE READ THEM CAREFULLY TO ENSURE THAT SUBSCRIBER UNDERSTANDS EACH PROVISION. This Agreement

Case 1:14-cv-00243-MR-DLH   Document 18-1   Filed 02/18/15   Page 14 of 30

requires the use of arbitration to resolve disputes and otherwise limits the remedies available to Subscriber in the event of a dispute.

Subject to the "Exclusions" paragraph below, Charter and Subscriber agrees to arbitrate disputes and claims arising out of or relating to this Agreement, the Services or marketing of the Services Subscriber has received from Charter. Notwithstanding the foregoing, either party may bring an individual action on any matter or subject in small claims court.

THIS AGREEMENT MEMORIALIZES A TRANSACTION IN INTERSTATE COMMERCE. THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THESE ARBITRATION PROVISIONS.

A party who intends to seek arbitration must first send to the other a written notice of intent to arbitrate, entitled "Notice of Intent to Arbitrate" ("Notice"). The Notice to Charter should be addressed to: VP and Associate General Counsel, Litigation, Charter Communications, 12405 Powerscourt Drive, St. Louis, MO 63131 ("Arbitration Notice Address"). The Notice must: (1) describe the nature and basis of the claim or dispute; and (ii) set forth the specific relief sought. If we do not reach an agreement to resolve the claim within 30 days after the Notice is received, Subscriber or Charter may commence an arbitration proceeding, in which all issues are for the arbitrator to decide (including the scope of the arbitration clause), but the arbitrator shall be bound by the terms of this Agreement.

The arbitration shall be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and the arbitration shall be administered by the AAA. The AAA Rules and fee information are available at "www.adr.org," by calling the AAA at 1-800-778-7879, or by writing to the Arbitration Notice Address.

CHARTER SHALL BEAR THE COST OF ANY ARBITRATION FILING FEES AND ARBITRATOR'S FEES FOR CLAIMS OF UP TO $75,000. SUBSCRIBER IS RESPONSIBLE FOR ALL OTHER ADDITIONAL COSTS THAT SUBSCRIBER INCURS IN THE ARBITRATION INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES OR EXPERT WITNESS COSTS UNLESS OTHERWISE REQUIRED OF CHARTER UNDER APPLICABLE LAW.

If the arbitrator's award exceeds $75,000, either party may appeal such award to a three-arbitrator panel administered by the AAA and selected according to the AAA Rules, by filing a written notice of appeal within 30 days after the date of entry of the arbitration award. The appealing party must provide the other party with a copy of such appeal concurrently with its submission of the appeals notice to AAA. The three-arbitrator panel must issue its decision within 120 days of the date of the appealing party's notice of appeal. The decision of the three-arbitrator panel shall be final and binding, except for any appellate right which may exist under the Federal Arbitration Act.

The parties may agree that arbitration will be conducted solely on the basis of the documents submitted to the arbitrator, via a telephonic hearing, or by an in-person hearing as established by AAA rules.

SUBSCRIBER AGREES THAT BY ENTERING INTO THIS AGREEMENT, SUBSCRIBER AND CHARTER ARE WAIVING THE RIGHT TO A TRIAL BY JUDGE OR JURY.

Unless Charter and Subscriber agree otherwise in writing, all hearings conducted as part of the arbitration shall take place in the county (or parish) of Subscriber's billing address.

The arbitrator may award injunctive relief only in favor of the party seeking relief, only to the extent sought, and only to the extent necessary to provide the specific relief warranted by such individual's claim.

The parties agree that the arbitrator must give effect to the terms of this Agreement.

SUBSCRIBER AND CHARTER AGREE THAT CLAIMS MAY ONLY BE BROUGHT IN SUBSCRIBER'S INDIVIDUAL CAPACITY AND NOT ON BEHALF OF, OR AS PART OF, A CLASS ACTION OR REPRESENTATIVE PROCEEDING

Furthermore, unless both Subscriber and Charter agree otherwise in writing, the arbitrator may not consolidate proceedings or more than one person's claims and may not otherwise preside over any form of representative or class proceeding. If this specific paragraph is found to be unenforceable, then the entirety of these arbitration provisions shall be null and void and rendered of no further effect with respect to the specific claim at issue.

Right to Opt Out. If Subscriber does not wish to be bound by these arbitration provisions, Subscriber must notify Charter in writing within 30 days of (a) the date that this arbitration provision becomes effective, if Subscriber is an existing customer, or (b) the date that Subscriber first subscribes to the Service(s). Subscriber may opt out by mail to the Arbitration Notice Address. Subscriber's written notification to Charter must include Subscriber's name, address, and Charter account number as well as a clear statement that Subscriber does not wish to resolve disputes with Charter through arbitration. Subscriber's decision to opt out of this arbitration provision will have no adverse effect on Subscriber's relationship with Charter or the delivery of Services to Subscriber by Charter.

Severability. If any clause within these arbitration provisions is found to be illegal or unenforceable, that specific clause will be severed from these arbitration provisions, and the remainder of the arbitration provisions will be given full force and effect.

NOTWITHSTANDING ANYTHING TO THE CONTRARY, IN THE EVENT SOME OR ALL OF THESE ARBITRATION PROVISIONS IS DETERMINED TO BE UNENFORCEABLE FOR ANY REASON, OR IF A CLAIM IS BROUGHT THAT IS FOUND BY A COURT TO BE EXCLUDED FROM THE SCOPE OF THESE ARBITRATION PROVISIONS, BOTH PARTIES AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY.

For purposes of the foregoing sentence only, in the event such waiver is found to be unenforceable, it shall be severed from this Agreement, rendered null and void and of no further effect without affecting the rest of the arbitration provisions set forth herein.

EXCLUSIONS. SUBSCRIBER AND CHARTER AGREE THAT THE FOLLOWING CLAIMS OR DISPUTES SHALL NOT BE SUBJECT TO ARBITRATION:

(1) ANY INDIVIDUAL ACTION BROUGHT BY SUBSCRIBER OR BY CHARTER ON ANY MATTER OR SUBJECT THAT IS WITHIN THE JURISDICTION OF A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS.

(2) ANY DISPUTE OVER THE VALIDITY OF ANY PARTY'S INTELLECTUAL PROPERTY RIGHTS.

(3) ANY DISPUTE RELATED TO OR ARISING FROM ALLEGATIONS ASSOCIATED WITH UNAUTHORIZED USE OR RECEIPT OF SERVICE.

For New York Video Customers, Subscriber may elect to resolve a Dispute through the New York Public Service Commission in accordance with NYCRR 16§890.709(a) and NYCRR 16§709(c).

The foregoing arbitration provisions shall survive the termination of this Agreement.

25. **Entire Agreement:** These Terms and Conditions (including the Terms of Service) constitutes the entire agreement between the Subscriber and Charter. No undertaking, representation or warranty made by an agent or representative of Charter in connection with the sale, installation, maintenance or removal of Charter's Services or Equipment shall be binding on Charter except as expressly included herein. Subscriber agrees that, if any portion of this Agreement is held invalid or unenforceable, that portion will be construed consistent with applicable law as nearly as possible, and if severed or rendered null and void thereby, the remaining portions will remain

in full force and effect. If Charter fails to insist upon or enforce strict performance of any provision of this Agreement, it does not thereby waive any provision or right. Neither the course of conduct between the parties nor trade practice shall act to modify any provision of this Agreement.

 Latest Happenings @ Twitter    Enter Charter Promotions on Facebook   Charter on YouTube

| Products | Charter Spectrum Internet | Contact Charter | Charter Sites |
|---|---|---|---|
| Charter Spectrum TV | Internet Features | Call | Charter.com |
| Charter Spectrum Internet | Charter Speed Test | Chat | Charter Business |
| Charter Spectrum Phone | Charter Security Suite® | | Charter.net |
| | Charter WiFi | Charter Info | Charter Media |
| Charter Spectrum TV | Speed Comparison | Careers | Charter en español |
| On Demand | | *Product Disclaimers | Charter Mobile |
| TV Apps | Charter Spectrum Voice | ^Kindle Fire HDX Disclaimer | Charter MDU |
| Premium Channels | Phone Features | °Contract Buyout Information | Charter our Community |
| HD/DVR | Charter Phone® Online Manager | About Charter | |
| Channel Lineup | | Weather Outages | |

My Account
Locations
Contact Us
Services in My Area
Charter Major You Sweepstakes

Charter Spectrum Bundles
Charter Spectrum Triple Play Select
Charter Spectrum Triple Play Silver
Charter Spectrum Triple Play Gold

Charter Communications

Why Spectrum Charter TV

International Calling
Family Safety Features

Investor & News Center
Your Privacy Rights
Terms of Service/Policies
Site Map

© 2015 Charter Communications, Inc.

# Exhibit "B"

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:14-cv-243

| | | |
|---|---|---|
| RICHARD H. HARTMAN, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CHARTER COMMUNICATIONS, INC.; | ) | |
| CHARTER COMMUNICATIONS, LLC.; | ) | **DEFENDANT CHARTER** |
| CHARTER COMMUNICATIONS (NC), | ) | **COMMUNICATIONS, LLC' S** |
| LLC.; CHARTER COMMUNICATIONS | ) | **RESPONSE TO PLAINTIFF'S FIRST** |
| VI, LLC.; CHARTER | ) | **SET OF** |
| COMMUNICATIONS VII, LLC.; | ) | **INTERROGATORIES, REQUEST** |
| CHARTER COMMUNICATIONS | ) | **FOR PRODUCTION OF DOCUMENTS,** |
| HOLDING COMPANY, LLC.; | ) | **AND REQUESTS FOR ADMISSION** |
| CHARTER CABLE OPERATING | ) | |
| COMPANY, LLC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

1.      Identify the organization(s), including, but not limited to any affiliates, subsidiaries, contractors, vendors, affiliates, or any other third-parties, who have called or otherwise contacted the Plaintiff to attempt to sell Charter Cable Television, Charter Internet and/or Charter Telephone services to the Plaintiff, to include the date and approximate time of each call, and the physical address from which any and all telephone calls originated from.

> **ANSWER:**
>
> **Objection. Defendant objects to this interrogatory as it is not limited in time or scope, is overly broad, and unduly burdensome. Subject to and without waiving said objections, during the time period identified in the Complaint, Straight Forward was a third party vendor believed to have made calls to Plaintiff, without the use of an automated dialing system, on or about the dates identified below and at the approximate time identified after each date:**

1

| | |
|---|---|
| 1/6/2014 | 2:07 pm |
| 1/9/2014 | 6:11 pm |
| 2/6/2014 | 5:39 pm |
| 3/5/2014 | 11:44 am |
| 3/10/2014 | 6:47 pm |
| 4/17/2014 | 6:33 pm |
| 4/22/2014 | 10:05 am |
| 4/23/2014 | 12:09 pm |
| 4/24/2014 | 4:54 pm |
| 4/26/2014 | 10:11 am |
| 4/28/2014 | 4:56 pm |
| 4/29/2014 | 5:03 pm |
| 4/30/2014 | 5:16 pm |
| 5/16/2014 | 4:05 pm |

**Defendants lack information regarding the physical address from which the calls identified originated.**

2.     Please identify the date, time, type (e.g., letter, telephone call), witnesses to or participants in, and the substance of each contact or attempted contact with Plaintiff made for any purpose, and if a telephone call, the type of equipment used to place the call, to include the manufacturer, model number and serial number of the device(s), and state whether an audio recording exists of the item.

> **ANSWER: Objection. Defendant objects to this interrogatory as it is not sufficiently limited in time or scope, is overly broad, and unduly burdensome. Subject to and without waiving said objections, there may have been mailings to Plaintiff during the time period identified in the Complaint as well as mailing the Plaintiff monthly bills.  During the time period identified in the Complaint, no phone calls were made by any employee of any of the Defendant entities to solicit services as identified in the Complaint. There was a telephone conversation on or about 9/29/2013 regarding the upgrade of Plaintiff's service and Plaintiff provided the telephone number identified in the Complaint as a contact number on the account.  No call was placed to the cellphone number in question for a possible rescheduling of the upgrade services and any calls made by Charter related to the upgrade of the Plaintiff's service were made by an individual without using an automated dialing system.**

2

3.    If your response to any Request for Admissions served simultaneously herewith is anything other than an unqualified admission, then please state as to each denial the specific facts forming the basis for such denial and identify each witness and document upon which you will rely to support your denials.

> **ANSWER: Objection. Pursuant to Rule 26 of the Federal Rules of Civil Procedure in that this interrogatory seeks information which may have been gained in anticipation of litigation, protected by the work product doctrine, attorney-client privilege or beyond the scope of discovery, further this interrogatory is overly broad and unduly burdensome.**

4.    Please state the names, aliases, job title, professional licenses/certifications and telephone numbers, date of initial employment and date of and reason for termination of employment of each of your employees who contacted or attempted to contact the Plaintiff for any purpose.

> **ANSWER: Objection. Defendant objects to this interrogatory as it is not sufficiently limited in time or scope, is overly broad, unduly burdensome, and beyond the scope of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, no representative of Defendant Charter Communications placed any calls to Plaintiff for the reasons alleged in Plaintiff's Complaint and no calls were made to Plaintiff by any employee of Charter for any reason during 2014, up to the present date.**

5.    Please identify any and all telecommunications equipment that you use to contact consumers including, but not limited to, automated telephone dialing systems, predictive dialers, telephone equipment, computer programs and any other hardware and/or software used for that purpose.  Include the name of the manufacturer, model number, serial number and physical location of each device, as well as the date(s) the device(s) were placed into service.

> **ANSWER: Objection. Defendant objects to this interrogatory as it is not sufficiently limited in time or scope, is overly broad, unduly burdensome, and beyond the scope of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Defendant Charter Communications**

3

did not place any phone calls to Plaintiff for the reasons listed in Plaintiff's Complaint and did not place any phone calls to Plaintiff at any time during 2014, up to the present date.

6.    Describe in detail the facts and circumstances surrounding any prior express consent you believe the Plaintiff gave you to place telemarketing telephone calls to his cellular telephone, including dates and times of said consent, witnesses to the same, and whether an audio recording exists of the item.

ANSWER:

In September of 2013, Plaintiff provided Defendant Charter Communications with the cellular number, 813-486-8287 as a contact number and verbally gave permission for Charter to call Plaintiff at the number provided.

7.    Identify any other lawsuits and/or arbitrations, judgments and/or settlements in which you have been a defendant, which alleged violations of the Telephone Consumer Protection Act in the past ten years, and/or violations of state telemarketing laws, to include:

a.    The parties to the action;

b.    The state court, federal court or arbitration forum the action was filed in;

c.    The date the action was filed

d.    The case and/or file number of the action;

e.    The outcome of the dispute.

ANSWER: Objection. Defendant objects to this interrogatory as it is not limited in time or scope, is overly burdensome as Charter Communications is located in many states, and seeks information that is beyond the scope of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Please produce the following:

4

1.     All documents relating to the account with the Plaintiff.

        **RESPONSE: See attached Exhibit 1.**

2.     All documents, including, but not limited to, contractor agreements, records of communications, among and/or between Defendant and any other entities, pertaining to those entities contacting the Plaintiff for sales and/or marketing purposes on behalf of the Defendants.

        **RESPONSE: Objection. This Request for Production is overly broad, unduly burdensome, beyond the scope of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence for Plaintiff's claims under the Telephone Consumer Protection Act. This Request for Production also seeks documents that contain sensitive information and the parties to the contracts have agreed to confidentiality clauses contained in each contract. Subject to and without waiving this objection, the call log provided by Straight Forward is attached hereto as Exhibit 2, for the calls made to Plaintiff by Straight Forward.**

3.     All documents, including, but not limited to, communications or agreements, between Defendant and any other person or entity, related to attempts to sell products and/or services to the Plaintiff.

        **RESPONSE: Objection. This Request for Production is overly broad, unduly burdensome, beyond the scope of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence for Plaintiff's claims under the Telephone Consumer Protection Act. This Request for Production also seeks documents that contain sensitive information and the parties to the contracts have agreed to confidentiality clauses contained in each contract. Subject to and without waiving this objection, the call log provided by Straight Forward is attached hereto as Exhibit 2, for the calls made to Plaintiff by Straight Forward.**

5

4.    Any insurance policies covering Defendant for violation of the Telephone Consumer Protection Act and/or any other state and/or federal laws purporting to regulate telemarketing telephone calls to consumers.

> **RESPONSE: Not applicable as Charter Communications does not have any insurance policies covering violations of the Telephone Consumer Protection Act.**

5.    All exhibits which Defendant proposes to, or has reason to believe it may, introduce at trial.

> **RESPONSE: Objection. This Request for Production seeks materials that are protected by the work product doctrine or attorney-client privilege as it seeks exhibits which Defendant is considering for use as an exhibit at trial. Subject to and without waiving objection, Defendant will identify any and all exhibits for trial pursuant to the Court's previously issued scheduling order.**

6.    All documents, including, but not limited to, audio tapes and/or transcripts, relating to telephone conversations between the Plaintiff and Defendant.

> **RESPONSE: Objection. Defendant objects to this Request for Production as it is not limited in time or scope and is overly broad. Without waiving said objections, there were no phone conversations between any employees of Charter in 2014 during the times alleged in the Complaint and there is no recording or transcript of the call to upgrade services in the Fall of 2013.**

7.    All documents, including, but not limited to, audio tapes and/or transcripts, relating to attempted calls to telephone numbers believed to belong to or are associated with Plaintiff.

> **RESPONSE: Objection. Defendant objects to this Request for Production as it is not sufficiently limited in time or scope, is overly broad, unduly burdensome, and beyond the scope of discovery pursuant to Rule 26(b) of the**

**Federal Rules of Civil Procedure to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, no representative of Defendant Charter Communications placed phone calls for the reasons alleged in Plaintiff's complaint.**

8.    A complete list of all telephone calls or attempted telephone calls to the Plaintiff, including the time and date of each call, the telephone number called, the telephone number the call originated from, and the physical location from which the call was placed.

> **RESPONSE: Objection. Defendant objects to this Request for Production as it is not sufficiently limited in time or scope, is overly broad, unduly burdensome, and beyond the scope of discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objection, no representative of Defendant Charter Communications called or had phone conversations with the Plaintiff during the time periods identified in the Complaint or for the reasons alleged in Plaintiff's Complaint.**

9.    Any documents, audio recordings or other items in which Plaintiff gave you prior express consent to call his cellular telephone for sales and/or marketing purposes.

> **RESPONSE: None**

10.    All other documents and things identified in your responses to Plaintiff's First Set of Interrogatories to Defendant not specifically requested in Requests 1-17 above.

> **RESPONSE: None**

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

7

Please admit the truth of the following:

1.     Defendant maintains an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

**ANSWER:  Denied as to any calls allegedly made to Plaintiff during the times alleged in Plaintiff's Complaint.**

2.     Defendant's representatives did not manually dial each phone number on a telephone keypad for each separate call that was made to Plaintiff's cellular telephone.

**ANSWER: Denied that any Charter Communications employees made calls to Plaintiff as alleged in Plaintiff's complaint.**

3.     On January 9, 2014, Plaintiff verbally told you not to call his cellular telephone.

**ANSWER: Denied.**

4.     On February 6, 2014, Plaintiff verbally told you not to call his cellular telephone.

**ANSWER: Denied.**

This the _____ day of December, 2014.

CRANFILL SUMNER & HARTZOG LLP

BY: _____
Samuel H. Poole, Jr., NC Bar # 13659
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
shp@cshlaw.com

8

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the attached *Defendant's Responses to Plaintiff's First Set of Interrogatories, Request for Production of Documents and Requests for Admission* on all of the parties to this cause by:

_____ Hand delivering a copy hereof to the attorney for each said party addressed as follows:

__x__ Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

_____ Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

_____ Telecopying a copy hereof to the attorney for each said party as follows:

> Richard H. Hartman, II
> 185A Weston Road
> Arden, NC 28704

This the __ day of December, 2014.

> CRANFILL SUMNER & HARTZOG LLP
>
> BY:_____
> Samuel H. Poole, Jr., NC Bar #13659
> *Attorneys for Defendants*
> P.O. Box 30787
> Charlotte, NC 28230
> Telephone (704) 332-8300
> Facsimile (704) 332-9994
> shp@cshlaw.com

9

# Exhibit
# "C"

# NOTICE OF INTENT TO ARBITRATE

February 12, 2015

Richard H. Hartman
185A Weston Road
Arden, NC 28704


VP and Associate General Counsel, Litigation
Charter Communications
12405 Powerscourt Drive
St. Louis, MO 63131

**Re: Notice of Intent to Arbitrate**
HARTMAN v. CHARTER COMMUNICATIONS, INC., ET AL.
1:14-CV-243,
United States District Court
Western District of North Carolina


Dear Charter Communications,

This communication is to serve as Notice that I intend to seek an Order compelling arbitration in the above-referenced dispute in accordance with the General Terms and Conditions For Charter Residential Services.

The nature and basis of my claim against Charter Communications is for violations of the Telephone Consumer Collections Act, specifically fourteen (14) auto-dialed telephone calls to my cellular telephone, on behalf of Charter Communications, between January 6, 2014 and May 16, 2014, for sales and marketing purposes.

The Telephone Consumer Protection Act provides for statutory damages of $500 per telephone call, and/or $1,500 damages per telephone call if the conduct was made willfully and knowingly, which is the specific relief sought in this dispute.

Thank you for your prompt attention to this matter.

Sincerely,

Richard H. Hartman
185A Weston Rd
Arden, NC 28704
rick@rickhartman.com
813-486-8287