THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:14-cv-00243-MR-DLH

| | |
|---|---|
| RICHARD H. HARTMAN, II ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CHARTER COMMUNICATIONS, ) <br> INC.; CHARTER ) <br> COMMUNICATIONS, LLC; ) <br> CHARTER COMMUNICATIONS ) <br> (NC), LLC; CHARTER ) <br> COMMUNICATIONS VI, LLC; ) <br> CHARTER COMMUNICATIONS ) <br> VII, LLC; CHARTER ) <br> COMMUNICATIONS HOLDING ) <br> COMPANY, LLC; CHARTER ) <br> CABLE OPERATING COMPANY,) <br> LLC; STRAIGHT FORWARD ) <br> OF WISCONSIN, INC. ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Compel Arbitration with Respect to Charter Communications, Inc. [Doc. 18] and the Defendants' Response Opposing in Part and Agreeing in Part to Plaintiff's Motion to Compel Arbitration [Doc. 20].

## I. PROCEDURAL BACKGROUND

The Plaintiff initiated this action on September 15, 2014, seeking damages from the Charter Defendants for alleged violations of the Telephone Consumer Protection Act ("TCPA"). [Doc. 1]. On February 9, 2015, the Plaintiff filed an Amended Complaint adding Straight Forward of Wisconsin, Inc. ("Straight Forward") as a Defendant. [Doc. 16].

The Plaintiff specifically alleged the following:

- This action arises out of facts and circumstances surrounding a series of unlawful "auto-dialed" telemarketing telephone calls the Defendants made to the Plaintiff's cellular telephone. [Doc. 16, Intro.].

- Charter Communications, Inc. ("Charter") is vicariously liable for the unlawful conduct of Straight Forward as alleged herein, as Charter had control and provided direction to Straight Forward, and the unlawful calls were placed on behalf of Charter Communications, Inc. [Doc. 16, ¶ 17].

- Straight Forward, on behalf of Charter, began calling the Plaintiff's cellular telephone…for the purpose of soliciting the Plaintiff to purchase cable television and other services. [Doc. 16, ¶ 18].

- Charter and/or Straight Forward used an auto-dialer to place telemarketing calls to Plaintiff's cellular telephone on numerous occasions… [Doc. 16, ¶ 25].

The agreement between the Plaintiff and Charter Communications, Inc. (the "Agreement") contained an arbitration provision:

> . . . This Agreement requires the use of arbitration to resolve disputes and otherwise limits the remedies available to Subscriber in the event of a dispute. . . Charter and Subscriber agrees to arbitrate disputes and claims arising out of or relating to this Agreement, the Services or marketing of the Services Subscriber has received from Charter. . . THIS AGREEMENT MEMORIALIZES A TRANSACTION IN INTERSTATE COMMERCE. THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THESE ARBITRATION PROVISIONS.

[Doc. 18-1, Section 24].

The Plaintiff filed his Motion to Compel Arbitration with Respect to Defendant Charter Communications, Inc. on February 18, 2015 [Doc. 18], and the Charter Defendants responded opposing in part and agreeing in part to the Plaintiff's motion [Docs. 20-21]. On March 30, 2015, this Court ordered Charter Communications, Inc.; Charter Communications, LLC; Charter Communications (NC), LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications Holding Company, LLC; and Charter Cable Operating Company ("the Charter Defendants") to file

their required Rule 7.1 corporate disclosures informing this Court of their relationships to one another [Doc. 25]. Further, this Court also ordered Straight Forward of Wisconsin, Inc. ("Straight Forward") to respond with its position regarding the Plaintiff's Motion to Compel Arbitration with Respect to Charter Communications, Inc. [Doc. 18] and the Defendants' Response Opposing in Part and Agreeing in Part to Plaintiff's Motion to Compel Arbitration [Doc. 20]. The Charter Defendants have now filed their Rule 7.1 disclosures [Docs. 26-32], and Defendant Straight Forward has also responded with an indication of its position regarding arbitration [Doc. 33].

This matter is now ripe for disposition.

## II. DISCUSSION

According to the Federal Arbitration Act ("FAA"), § 2:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2. The Fourth Circuit has held that "a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a

4

dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

Where there is a valid arbitration agreement and a claim has been made raising issues within its scope, "[a] district court . . . has no choice but to grant a motion to compel arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). There is a strong public policy in favor of arbitration in North Carolina and on the federal level. See Johnston County v. R.N. Rouse & Co., 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992); see also Vaden v. Discover Bank, 556 U.S. 49, 129 S.Ct. 1262, 1265 (2009).

In some cases, state law "traditional principles" "allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (citing 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). Thus, nonsignatories may demand arbitration under the FAA when the signatory's claims against the nonsignatory presume the

5

existence of the agreement and the signatory's claims directly relate to the agreement. Id.; see also American Bankers Insurance Group v. Long, 453 F.3d 623, 626-30 (4th Cir. 2006) (holding that both a signatory and a nonsignatory were bound by an arbitration clause through equitable estoppel); see also Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 395-96 (4th Cir. 2005); see also J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988) (holding that a parent company was bound by an arbitration agreement signed by its subsidiary where the charges against both companies were "based on the same facts" and "inherently inseparable").

Further, according to the FAA, § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3.

Here, the arbitration provision in the Agreement between the Plaintiff and Charter Communications, Inc. is unambiguous, and the Defendants

6

have not questioned its validity. [Doc. 18-1, Section 24]. Thus, the arbitration provision is enforceable by this Court. The Charter Defendants agree with the Plaintiff that "arbitration is appropriate in this case according to the Service Agreement[,] but also contend that *all Charter Defendants should be included* in the arbitration as the claims against Charter Communications, Inc. are inseparably intertwined with the claims against the other Charter Defendants . . . [and] the arbitration provision is broad in scope." [Doc. 21 at 2].

Here, the contract between the Plaintiff and Charter Communications, Inc. with its valid arbitration provision, can be enforced against all of the Charter Defendants. The Charter Defendants have disclosed their relationships to one another through their Rule 7.1 corporate disclosure statements [Docs. 26-32]. These statements reveal that the Charter Defendants have a closely intertwined business relationship. [Id.].[1] Many of

---

[1] Charter Communications Operating, LLC is the 100% sole member of Charter Communications, LLC. [Doc. 27]. Charter Communications Operating Holdings, LLC is the 100% sole member of Charter Communications Operating, LLC. [Id.]. Charter Communications Holdings II, LLC is the 100% sole member of Charter Communications Operating Holdings, LLC. [Id.]. Charter Communications VI Operating Company, LLC is the 100% sole member of Charter Communications VI, LLC. [Doc. 28]. Charter Communications Operating NR Holdings, LLC is the 100% sole member of Charter Communications VI, LLC. [Id.]. Charter Communications Operating, LLC is the 100% sole member of Charter Communications Operating NR Holdings, LLC. [Id.]. Charter Communications Operating NR Holdings, LLC is the 100% sole member of Charter Communications VII, LLC. [Id.]. Charter Communications Operating, LLC is the 100% sole member of Charter Communications Operating NR Holdings, LLC. [Id.]. Charter Communications Operating Holdings, LLC is the 100% sole member of Charter

the Charter entities are the 100% sole members of other Charter entities. All of the charges relate to an alleged "series of unlawful 'auto-dialed' telemarketing telephone calls the Defendants made to the Plaintiff's cellular telephone." [Doc. 16, Intro.]. Thus, the arbitration provision here relates to numerous companies which are "inherently inseparable," where the charges against all of them are "based on the same facts." J.J. Ryan & Sons, 863 F.2d at 320-21.

Further, the arbitration provision in the Agreement is also enforceable as to Defendant Straight Forward. Straight Forward "desires to join the Charter Defendants and Plaintiff in binding arbitration, as permitted by their Service Agreement." [Doc. 33]. The Plaintiff's allegations indicate an intertwined relationship between Charter Communications, Inc. and Straight Forward, as follows:

- Charter Communications, Inc. ("Charter") is vicariously liable for the unlawful conduct of Straight Forward as alleged herein, as Charter had control and provided direction to Straight Forward, and the unlawful

---

Communications Operating, LLC. [Doc. 29]. Charter Communications, Inc., Charter Communications I Exchange I, LLC, and Charter Investment, LLC are the members of Charter Communications Holding Company. [Doc. 30]. Charter Communications Operating, LLC is the 100% sole member of Charter Cable Operating Company, LLC. [Doc. 31]. Charter Communications (NC), LLC is the name by which Charter Communications, LLC is known in North Carolina as a forced assumed name. [Doc. 32].

calls were placed on behalf of Charter Communications, Inc. [Doc. 16, ¶ 17].

- Straight Forward, on behalf of Charter, began calling the Plaintiff's cellular telephone…for the purpose of soliciting the Plaintiff to purchase cable television and other services. [Doc. 16, ¶ 18].
- Charter and/or Straight Forward used an auto-dialer to place telemarketing calls to Plaintiff's cellular telephone on numerous occasions… [Doc. 16, ¶ 25].

Here, all of the parties will be best served by proceeding with arbitration in this case. The issues are very closely related, and the claims against Straight Forward presume the existence of the Agreement between the Plaintiff and the signatory Charter Communications, Inc. Thus, this Court will order that all of the parties participate in arbitration according to the Agreement.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Compel Arbitration with Respect to Charter Communications, Inc. [Doc. 18] is **GRANTED**, and all the parties in this case are hereby ordered to arbitrate.

**IT IS FURTHER ORDERED** that this case be referred to arbitration, and the Clerk of Court is directed to administratively close this case.

**IT IS SO ORDERED.**

Signed: April 17, 2015

Martin Reidinger
United States District Judge